

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
April 4, 2023 12:42 PM
PAVAN PARIKH
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1304075

**PORTIA SMALL**                    A 2301365

vs.

**GRAD CINCINNATI INC**

## FILING TYPE:  INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 24

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PORTIA SMALL | ) | CASE NO. |
| 1006 Ruledge Ave. | ) | |
| Cincinnati, OH 45205 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES AND** |
| | ) | **INJUNCTIVE RELIEF** |
| GRAD CINCINNATI, INC. | ) | |
| 301 Oak St. | ) | **(Jury Demand Endorsed Herein)** |
| Cincinnati, OH 45219 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| GRAD CINCINNATI, INC. | ) | |
| c/o Patricia Stewart Adams (Stat. | ) | |
| Agent) | ) | |
| 301 Oak St. | ) | |
| Cincinnati, OH 45219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| PATRICIA STEWART-ADAMS | ) | |
| 301 Oak St. | ) | |
| Cincinnati, OH 45219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| SARA RUNGE | ) | |
| 301 Oak St. | ) | |
| Cincinnati, OH 45219 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Portia Small by and through undersigned counsel, as her Complaint against the

Defendants, states and avers the following:

## PARTIES

1. Small is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant Grad Cincinnati, Inc. ("GradCincy") is a non-profit corporation that does business and/or provides services in the State of Ohio. The relevant location of the events and omissions of this Complaint took place was 301 Oak Street, Cincinnati, OH 45219.

3. GradCincy is, and was at all times hereinafter mentioned, Small's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C § 203, *et seq.*, the Ohio Minimum Fair Wage Standards Act, R.C. § 4111, *et seq.*, and Ohio R.C. §4112, *et seq.*

4. Upon information and belief, Defendant Patricia Stewart-Adams is a resident of the state of Ohio.

5. Stewart-Adams is and/or was an employee of GradCincy.

6. Stewart-Adams did, and at all times hereinafter mentioned, act directly or indirectly in the interest of GradCincy and/or within the scope of her employment at GradCincy.

7. At all relevant times referenced herein, Stewart-Adams supervised and/or controlled Small's employment at GradCincy.

8. Upon information and belief, Defendant Sara Runge is a resident of the state of Ohio.

9. Runge is and/or was an employee of GradCincy.

10. Runge did, and at all times hereinafter mentioned, act directly or indirectly in the interest of GradCincy and/or within the scope of her employment at GradCincy.

11. At all relevant times referenced herein, Runge supervised and/or controlled Small's employment at GradCincy.

12. Within 300 days of the adverse employment actions described herein, Small dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") against GradCincy, Charge No. 473-2023-00329 ("EEOC Charge").

13. On or about January 19, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Small regarding her EEOC Charge.

14. Small received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

15. Small has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

16. Small has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

17. All the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

18. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that Plaintiff is alleging federal law claims under Title VII, the ADA, and the FLSA.

20. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

22. Small is a former employee of GradCincy.

23. At all times noted herein, Small was qualified for her position with GradCincy.

24. At all times noted herein, Small could fully perform the essential functions of her job, with or without a reasonable accommodation.

25. Small worked for GradCincy as an AmeriCorps VISTA worker from 2016 to 2019.

26. Small was then hired on by GradCincy as a contracted College Readiness Coordinator from 2019 to August 21, 2020.

27. GradCincy hired Small full-time on or about August 21, 2020.

28. Small worked as a full-time College Readiness Coordinator from August 21, 2020, until GradCincy unlawfully terminated her employment on or about June 16, 2022.

29. Small is African American, placing her in a protected class for race.

30. Small suffers from anxiety, has been diagnosed with anxiety, and takes prescription medication for her anxiety, thus placing her in a protected class for disability.

31. Since becoming a full-time employee, Small received mixed communication regarding her status as an hourly versus salaried employee.

32. Although Small was told she was a salaried employee, she was required to submit her weekly time sheets to Stewart-Adams (Caucasian), Executive Director of GradCincy.

33. Additionally, if Small's hours were greater than 40 hours for the week, Stewart-Adams would require Small to alter her timesheets to indicate that she worked no more than 40 hours in a week.

34. Small joined GradCincy after initially being in the program as a student.

4

35. Small enjoyed working with the students and helping them become responsible young adults.

36. However, Small had difficult times while working at GradCincy.

37. In early 2021, Small had to take a leave of absence after having a panic attack at work.

38. Following this incident, Small noticed that Stewart-Adams and her assistant, Michelle Roddy (Caucasian), began keeping a close eye on Small.

39. Roddy indicated she was keeping an eye on Small because she "wanted to make sure [Small] was doing better."

40. However, Small also faced unwelcome comments about her mental health from Stewart-Adams, who belittled Small based on her disability.

41. In March 2022, Small was having car problems and Roddy offered to help her.

42. Small agreed to let Roddy help, and the two of them went to look at new cars together.

43. While looking at cars, Small mentioned that a coworker, Tammy Gilmore (African American), had offered to help Small with her car problems.

44. Roddy responded that Gilmore "had her own issues."

45. Roddy did not clarify this statement, which caused Small to misunderstand the situation.

46. On or about April 3, 2022, after having the conversation with Roddy, Small spoke with Gilmore out of concern that she was going to be terminated from GradCincy.

47. Small disclosed this fear to Gilmore during their conversation.

48. Gilmore then went and called Roddy to talk about what she had learned from Small.

49. Roddy had lunch with Stewart-Adams during this phone conversation.

5

50. After overhearing the conversation between Roddy and Gilmore, Stewart-Adams reached out to Small and stated that she would be written up for "causing waves in [Patricia's] organization."

51. Learning of the miscommunication, Small apologized for upsetting Roddy to Stewart-Adams and wrote an email of apology to Roddy.

52. However, Small explained she did not agree with the write up.

53. In mid-April 2022, Small had her yearly evaluation with Stewart-Adams.

54. Stewart-Adams began the evaluation by stating, "I don't know where to start with you, but this year sucks."

55. Small was taken aback by Stewart-Adams' comment, as Small had completed all her job duties throughout the year and turned in her work on time.

56. Stewart-Adams then brought out a list of things that Small was allegedly doing wrong.

57. Small had already seen this list, as it was created and shared with her by a coworker, Shawnette Davis (African American).

58. Davis had created this list as a recommendation for Small to grow in her role, not as a list of things Small was doing wrong.

59. However, Stewart-Adams used this list as ammunition to degrade Small.

60. At the end of her review, Stewart-Adams informed Small her role would be changing the next year.

61. Specifically, Stewart-Adams stated Small could either continue working for GradCincy part-time during the next school year, or not work for GradCincy at all.

62. Stewart-Adams stated this was Small's choice to make.

63. Small did not provide a response to the ultimatum during the meeting with Stewart-Adams.

6

64. Small did not receive the alleged write up for "causing waves" prior to leaving for her vacation from May 25, 2022, through June 6, 2022.

65. As almost two months had passed since Stewart-Adams stated Small would receive a write up, Small assumed Stewart-Adams had changed her mind.

66. Stewart-Adams sent the write up for signature during Small's vacation.

67. As Small was not checking her email during vacation, she missed the communication in her inbox.

68. When Small returned from vacation, Stewart-Adams never followed up on the write up that had been sent to, but not seen by, Small.

69. On or about June 7, 2022, Small returned to work to conduct a college tour.

70. During this tour, only five or six students had signed up to participate, as Stewart-Adams had created a policy that students who had already graduated were not allowed to attend the tour.

71. After learning of the low number of participants for the tour, Stewart-Adams called Small and Davis into a meeting to discuss the lack of student participation.

72. During the meeting, Stewart-Adams blamed the staff for the lack of participation and for being disrespectful.

73. After being belittled by Stewart-Adams, Davis had had enough of the mistreatment and took an Uber back to the high school campus where she worked.

74. With Davis leaving, Small was left at the UC Blue Ash Campus alone.

75. As Small's anxiety had been triggered by the heated exchange with Stewart-Adams, she went for a walk.

7

76. Small also called the other staff to let them know Davis was on her way back to the high school.

77. When Small went back into the facility, she tried to calmly explain herself and Davis's observations to Stewart-Adams again.

78. However, Stewart-Adams exploded and stated, "maybe I should just pull my program."

79. Taken aback by Stewart-Adams' outburst and still struggling with her anxiety, Small responded "maybe you should."

80. At the end of her conversation with Stewart-Adams, Small stated she might need a couple of days to get her mind right.

81. Stewart-Adams was aware of Small's struggles with anxiety, but responded, "don't use that as an excuse."

82. Small then referenced Stewart-Adams' previous ultimatum from her April 2022 review and said, "You are giving me a choice and I don't know what choice I am going to choose at this point because this is too much."

83. Small returned to work the next few days, and things had seemed to calm down.

84. In the coming days, Small and some of her coworkers were scheduled to oversee a college tour of Northern Kentucky University ("NKU") between June 13, 2022, and June 15, 2022.

85. The NKU tour had been set up by Runge (Caucasian), a Board Member of GradCincy, as she was also an employee at NKU.

86. It is important to note that most of the staff and students participating in the NKU tour from GradCincy were African American.

87. During the tour at NKU, the staff of GradCincy and the student participants faced immense amounts of racial bias towards them.

88. On the first day of the tour, GradCincy students asked the NKU facilitator if they could use the pool during outdoor activity times.

89. However, the facilitator responded, "we don't have a pool." This was very confusing, as the pool is advertised in a lot of NKU materials, including their website.

90. However, GradCincy students later saw a Caucasian group of students from a different tour group leaving the pool.

91. As GradCincy students were not allowed to use the pool, they went to NKU's recreation room and asked to use the basketball courts instead.

92. While GradCincy students were at the basketball courts, another tour group, Upward Bound, also came in to use the basketball courts.

93. As a note, the Upward Bound students were predominantly Caucasian.

94. When the GradCincy students tried to mingle with the Upper Bound students, they overheard the Upward Bound staff tell their students to stay away from the GradCincy students because they "looked dangerous."

95. NKU staff then lowered a barrier on the basketball court, at the request of Upward Bound staff, which segregated the African American GradCincy group and the Caucasian Upward Bound group.

96. Later that night, several of the GradCincy students were hungry due to the cafeteria closing at 6:00pm.

97. The parents of GradCincy students had provided the GradCincy staff with additional money if the students wanted snacks during the trip.

98. Therefore, Small and her coworker, Tori Alexander (African American), took the students to the convenience store directly beside campus and got the students some snacks.

9

99. The students then were sent to bed by curfew.

100. The next day, the GradCincy staff were continuing the tour as planned.

101. At one point, one of the students approached Small and was crying.

102. The student disclosed that Runge had been reprimanding the students and grabbed the student's arm.

103. Shortly after the incident, Stewart-Adams showed up at the school following a complaint from Runge about the GradCincy tour group.

104. When Stewart-Adams arrived at NKU, she immediately began scolding the staff and students.

105. The staff tried to explain to Stewart-Adams about the racial biases they had faced while touring NKU.

106. However, Stewart-Adams refused to listen.

107. Instead, Stewart-Adams stated that the GradCincy staff were not doing their jobs and were not properly supervising the students.

108. The students expressed they were uncomfortable at NKU, but Stewart-Adams had already chosen to side with Runge.

109. Notably, Stewart-Adams had made it known in the past to staff that Runge helped fund GradCincy through donations.

110. During the last day of the tour, Stewart-Adams required the students to get up one by one and present and report on the things they had learned at NKU.

111. Towards the end of the presentations, Stewart-Adams noticed one of the students, who was of African descent, had not presented what he had learned.

10

112. Stewart-Adams asked the boy to present, and the child responded that he felt like he should not present.

113. Stewart-Adams made him go up anyway.

114. The student began his presentation by stating, "I didn't really want to present, but I guess I'll first start off with the bad stuff."

115. Stewart-Adams then ended the child's presentation and forced him to go sit back down.

116. After the presentations were over, the GradCincy staff took the children to the Starbucks on campus before heading back to their designated schools.

117. While at Starbucks, Small was the closest staff member to the child who had tried to present what he did not like about NKU.

118. Stewart-Adams, Roddy, and coworker Monica Keenan (African American) walked up to the child and Small and began berating the child about being disrespectful.

119. Small tried to get the child away from Stewart-Adams, Roddy, and Keenan, but they continued to scold him for being disrespectful.

120. After leaving Starbucks, Small was with the other staff helping get the children loaded onto the bus.

121. Stewart-Adams approached Small during this time and stated, "you know we have a meeting tomorrow."

122. Small responded she did not know that a meeting had been scheduled but agreed to meet Stewart-Adams at 11:00 a.m. the following day.

123. On or about June 16, 2022, Small arrived at the GradCincy office shortly before 11:00 a.m. and was let in by the security guard, as she had left her badge at home.

11

124.    Small then waited for Stewart-Adams to arrive for their meeting.

125.    When Stewart-Adams arrived, she immediately began telling Small the students had not received permission to be taken off campus to get snacks during the first day of the tour.

126.    Stewart-Adams then typed up a letter of resignation and asked Small to sign the letter.

127.    Stewart-Adams also handed Small a write up for the incident in April 2022, wherein Stewart-Adams accused Small of "making waves" and told Small to sign the write up as well.

128.    In the resignation letter, it stated Small had given her verbal resignation on June 7, 2022.

129.    Small stated she had never resigned and would not be signing either document.

130.    Stewart-Adams then demanded Small hand over her laptop and badge.

131.    Small explained the items were at her house; however, Stewart-Adams did not believe Small.

132.    Instead, Stewart-Adams asked to search Small's purse.

133.    Small refused to let Stewart-Adams search her purse, and then Stewart-Adams tried to snatch Small's purse and threatened to call security.

134.    Feeling unsafe, Small got up and began to leave the meeting.

135.    Stewart-Adams stated Small needed to return the laptop and badge that day.

136.    Small then left and went to get her things from the high school she regularly worked at during the week.

137.    However, Stewart-Adams had already called the school and stated Small "no longer worked" for GradCincy.

138.    On or about June 17, 2022, Small submitted a formal complaint to the Board of GradCincy regarding her wrongful termination.

139.    This constituted a protected complaint.

140.    However, the Board responded that they would not address Small's complaint.

141.    All the while, Stewart-Adams continued to call Small and demand that Small sign the resignation.

142.    Shortly after her termination, Small wrote a letter to Stewart-Adams stating she would return the laptop and badge through UPS.

143.    However, Stewart-Adams responded that Small would have to pick up a paper copy of her final check and agreed Small could meet Patricia Thomas (race unknown), Payroll Administrator, to retrieve the check.

144.    Therefore, Small was forced to go back to GradCincy, although she did not feel comfortable returning to the facility.

145.    On or about June 22, 2022, Small went to GradCincy and returned her laptop and badge to security.

146.    Small then received a check from Thomas.

147.    Upon review, the check was incorrect, and Small had to return two hours later to pick up a corrected check.

148.    A week later, Small received a letter in the mail with the resignation letter she had refused to sign.

13

149.     The above facts demonstrate that GradCincy engaged in a pattern and practice of race discrimination.

150.     There was a causal connection between Small's race and GradCincy's termination of Small.

151.     There was a causal connection between Small disability and GradCincy's termination of Small.

152.     GradCincy's purported reason for Small's employment termination was pretextual.

153.     GradCincy actually terminated Small's employment in in an act of discrimination.

154.     As a result of the above, Small has suffered and will continue to suffer damages.

## COUNT I: WRONGFUL TERMINATION BASED ON RACIAL DISCRIMINATION
### (Defendant GradCincy Only)

155.     Small restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156.     Throughout her employment, Small was fully competent to perform her essential job duties.

157.     Small is a member of a statutorily protected class under R.C. § 4112.02(A).

158.     GradCincy treated Small differently than other similarly situated employees based on her race.

159.     GradCincy violated R.C. § 4112.02(A) *et seq.* by discriminating against Small due to her race.

160.     On or about June 16, 2022, GradCincy terminated Small without just cause.

161.     Alternatively, Defendant's cited reason for Small's termination was pretext.

162.     At all times material herein, similarly situated non-African American employees were not terminated without just cause.

14

163.     Defendant terminated Small based on her race.

164.     Small's race was a determinative factor in Defendant's decisions to take multiple adverse actions against Small.

165.     Defendant violated R.C. § 4112.01 *et. seq.* when it terminated Small based on her race.

166.     Small suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

167.     As a direct and proximate result of Defendant's conduct, Small has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: WRONGFUL TERMINATION BASED ON RACIAL DISCRIMINATION (Defendant GradCincy Only)

168.     Small restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169.     Throughout her employment, Small was fully competent to perform her essential job duties.

170.     Small is a member of a statutorily protected class under Title VII.

171.     GradCincy treated Small differently than other similarly situated employees based on her race.

172.     GradCincy violated Title VII by discriminating against Small due to her race.

173.     On or about June 16, 2022, Defendant terminated Small without just cause.

174.     Alternatively, Defendant's cited reason for Small's termination was pretext.

175.     At all times material herein, similarly situated non-African American employees were not terminated without just cause.

176.     Defendant terminated Small based on her race.

177.     Small's race was a determinative factor in Defendant's decisions to take multiple adverse actions against Small.

178.     Defendant violated Title VII when it terminated Small based on her race.

179.     Small suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII.

180.     As a direct and proximate result of Defendant's conduct, Small has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION
### (Defendant GradCincy Only)

181.     Small restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

182.     Small suffers from anxiety.

183.     Small is disabled.

184.     In the alternative, GradCincy perceived Small as being disabled.

185.     Small's condition constituted a physical impairment.

186.     Small's condition substantially impaired one or more of her major life activities including working.

187.     GradCincy perceived Small's condition to substantially impair one or more of her major life activities including working.

188.     GradCincy treated Small differently than other similarly-situated employees based on her disabling condition.

16

189.    GradCincy treated Small differently than other similarly-situated employees based on her perceived disabling condition.

190.    On or about June 16, 2022, Defendant terminated Small's employment without just cause.

191.    Alternatively, Defendant's cited reason for Small's termination was pretext.

192.    Defendant terminated Small's employment based her disability.

193.    Defendant terminated Small's employment based her perceived disability.

194.    Defendant violated R.C. § 4112.02 when it discharged Small based on her disability.

195.    Defendant violated R.C. § 4112.02 when it discharged Small based on her perceived disability.

196.    Defendant violated R.C. § 4112.02 by discriminating against Small based on her disabling condition.

197.    Defendant violated R.C. § 4112.02 by discriminating against Small based on her perceived disabling condition.

198.    Small suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

199.    As a direct and proximate result of Defendant's conduct, Small suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION
### (Defendant GradCincy Only)

200.    Small restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

17

201.    Small suffers from anxiety.

202.    Small is disabled.

203.    In the alternative, GradCincy perceived Small as being disabled.

204.    Small's condition constituted a physical impairment.

205.    Small's condition substantially impaired one or more of her major life activities including working.

206.    GradCincy perceived Small's condition to substantially impair one or more of her major life activities including working.

207.    GradCincy treated Small differently than other similarly-situated employees based on her disabling condition.

208.    GradCincy treated Small differently than other similarly-situated employees based on her perceived disabling condition.

209.    On or about June 16, 2022, Defendant terminated Small's employment without just cause.

210.    Alternatively, Defendant's cited reason for Small's termination was pretext.

211.    Defendant terminated Small's employment based her disability.

212.    Defendant terminated Small's employment based her perceived disability.

213.    Defendant violated the ADA when it discharged Small based on her disability.

214.    Defendant violated the ADA when it discharged Small based on her perceived disability.

215.    Defendant violated the ADA by discriminating against Small based on her disabling condition.

18

216.     Defendant violated the ADA by discriminating against Small based on her perceived disabling condition.

217.     Small suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

218.     As a direct and proximate result of Defendant's conduct, Small suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATION
## (Defendant GradCincy Only)

219.     Small restates each and every prior paragraph of this complaint, as if it were fully restated herein.

220.     As a result of the Defendant's discriminatory conduct described above, Small complained about the discrimination she was experiencing.

221.     Subsequent to Small's reporting of discrimination to Defendant, Small's employment was terminated.

222.     Defendant's actions were retaliatory in nature based on Small's opposition to the unlawful discriminatory conduct.

223.     Pursuant to Title VII, the ADA, and R.C. §4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

224.     Small suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII, the ADA, and R.C. § 4112.01 *et seq.*

225.     As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Small, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: VIOLATION OF THE FLSA
### (Defendant GradCincy Only)

226.     Small restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

227.     During all times material to this Complaint, Small was not exempt from receiving minimum wage under the FLSA because, *inter alia*, she was not an "executive," "computer," "administrative," or "professional" employee, as those terms are defined under the FLSA. See 29 C.F.R. §§ 541.0, *et seq.*

228.     During all times material to this Complaint, Defendant violated the FLSA with respect to the Small by, *inter alia*, failing to compensate her at time-and-one-half their regular rates of pay for any hours worked in excess of forty (40) hours per workweek.

229.     During all times material to this complaint, Defendant knew that Small was not exempt from the minimum wage and overtime obligations imposed by the FLSA. Defendant also knew that they were required to pay Small at least the applicable minimum wage, plus overtime compensation at a rate of one and one-half their respective regular rates for hours worked in excess of forty (40) hours per workweek. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Small is entitled.

230.     In violating the FLSA, Defendant acted willfully, without a good faith basis and in reckless disregard of clearly applicable FLSA provisions.

E-FILED 04/04/2023 12:42 PM  /  CONFIRMATION 1304075  /  A 2301365  /  COMMON PLEAS DIVISION  /  IFIJ

231.    As a direct and proximate cause of Defendant's conduct, pursuant to 29 U.S.C. §

216(b), Defendant is liable to Small and those similarly situated for the full amount of the

required minimum wage rate, an additional equal amount as liquidated damages as well as

costs and reasonable attorney fees.

## COUNT VII: VIOLATION OF THE OHIO WAGE ACT
### (Defendant GradCincy Only)

232.    Small restates each and every prior paragraph of this Complaint, as if it were fully

restated herein.

233.    The Ohio Wage Act requires that covered employees be compensated for every

hour worked in a workweek. *See* R.C. §§ 4111.01, *et seq.*

234.    During all times material to this Complaint, Small was a covered employer required

to comply with the Ohio Wage Act's mandates.

235.    During all times material to this Complaint, Small was a covered employee entitled

to individual protection of Ohio Wage Act.

236.    Defendant violated the Ohio Wage Act with respect to Small by, *inter alia*, failing

to compensate Small for all hours worked and failing to pay Small overtime.

237.    In violating the Ohio Wage Act, Defendant acted willfully, without a good faith

basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## COUNT VIII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Defendants Stewart-Adams and Runge Only)

238.    Small restates each and every prior paragraph of this Complaint, as if it were fully

restated herein.

21

239.     Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

240.     Defendants aided, abetted, incited, coerced, and/or compelled GradCincy's discriminatory treatment of Small.

241.     Defendants aided, abetted, incited, coerced, and/or compelled GradCincy's discriminatory termination of Small.

242.     Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

243.     Small suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

244.     As a direct and proximate result of Defendants' conduct, Small has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Small demands from Defendants the following:

a)  Issue a permanent injunction:

    i.    Requiring Defendants to abolish discrimination, harassment, and retaliation;

    ii.   Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.  Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal

22

responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.   Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge her personnel file of all negative documentation;

c) An award against each Defendants for compensatory and monetary damages to compensate Small for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Small's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
Trial Attorney
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEES' LAW FIRM**

23

Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorneys for Plaintiff Portia Small*

## JURY DEMAND

Plaintiff Portia Small demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
Trial Attorney
**SPITZ, THE EMPLOYEES' LAW FIRM**

24